UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| KIMBERLY CANNON-ATKINSON, | |
| Plaintiff, | |
| v. | Civ. No. 98-1408 (PG) |
| WILLIAM S. COHEN, SECERTARY OF DEFENSE, | |
| Defendant. | |

## OPINION & ORDER

Plaintiff Kimberly Cannon-Atkinson ("Atkinson") filed suit against Defendant William Cohen, Secretary of Defense, alleging discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, when she was not selected for a mechanical engineering position at the United States Naval Station at Sabana Seca, Puerto Rico. (Dkt. 1) Plaintiff based her complaint on both race and gender discrimination.

Defendant filed a Motion for Summary Judgment asserting three grounds for dismissal. (Dkt. 10) First, Defendant asserts that Plaintiff failed to establish her *prima facie* case as required under a Title VII claim. Second, Defendant maintains that, notwithstanding Plaintiff's previously mentioned failure, Defendant has put forth a legitimate, non-discriminatory reason for the non-selection. Lastly, Defendant argues that Mr. Cohen is not the proper party defendant, but rather John Dalton, as Secretary of the Navy is the proper party defendant. Plaintiff filed a response in Opposition to Defendant's Motion for Summary Judgment. (Dkts. 15 & 16) Consistent with the reasoning set out below, the Court grants Defendant's motion.

AO 72A
(Rev.8/82)

98-1408 (PG) 2

## SUMMARY JUDGMENT STANDARD

Summary judgment is "a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Messnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992). In essence, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). *See also Celotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986). The trial court must go beyond the façade of the pleadings and "assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992), *cert. denied*, 507 U.S. 1030 (1993). Throughout the court's analysis, "the entire record [must be seen] in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). *See also Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1st Cir. 1999), *reh'g denied by* 171 F.3d 710 (1st Cir. 1999), *cert. denied* __ U.S. __, 120 S. Ct. 44 (1999); *Maldonado-Denis v. Castillo-Rodríguez*, 23 F. 3d 576, 581 (1st Cir. 1994).

In order to prevail on a motion for summary judgment, the moving party first must make a preliminary showing that there is no genuine issue of material fact which requires resolution at trial. *See Cadle Co. v Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). Once the moving party has properly supported it's motion, "the burden shifts to the nonmovant to demonstrate, through specific facts, that a trialworthy issue remains." *Id. See also Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.*, 96 F.3d 10, 14 (1st Cir. 1996). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find

98-1408 (PG) 3

for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50).

## FACTS

On July 5, 1995, Plaintiff visited the Human Resources Office ("HRO") at Roosevelt Roads Naval Base in Ceiba, Puerto Rico. Her purpose for the visit was to apply for the Priority Placement Program as a spouse preference ("Spouse Preference Program or "SPP"). Plaintiff's name and qualifications were entered into the system. Olga Díaz, an employee at HRO, informed Plaintiff that she would only be referred for positions that she was considered highly qualified for by HRO.

On November 6, 1995, HRO referred Plaintiff's name to Naval Security Group Activity through SPP.[1] Though Management was authorized to accept Plaintiff for the position without advertising the vacancy or considering other applicants, Management decided to open the position (GS-0830-11 Mechanical Engineer[2]). Applications were accepted from November 22, 1995 through December 7, 1995. Plaintiff was considered for the position and referred, along with two other candidates. Once the position was opened, Plaintiff contacted an Equal Employment Opportunity counselor for advice.

The vacancy announcement "strongly encouraged" the applicants to address their knowledge,

---

[1] The SPP provides in pertinent part: **Alternate Recruitment Sources**: Provided that all other Priority 1, 2, and 3 résumés have been appropriately cleared in accordance with Chapter 4, Priority 3 military spouse referral do not preclude the activity from filling the position using on of the following alternate sources: . . . c. Transfer, reassignment, or change to a lower grade. Military Spouse Preference Program, exh. 3 of Dkt. 10. The SPP gives no advantage over transfers, reassignments or changes to lower grades. And in this case, no one candidate had any priority over any other.

[2] The Mechanical Engineering position was to deal with maintenance and construction of facilities, also described as the public works area.

98-1408 (PG) 4

skills and abilities in writing.[3] The announcement also made clear that Professional Registration was not preferred but required. This registration could be from any state, the District of Columbia, Guam, or Puerto Rico, and candidates were allowed up to a year to obtain such status.

A certificate of eligibles was issued on December 13, 1995. Along with Plaintiff, the other candidates listed on the certificate were both Puerto Rican males, Mr. Santiago Montalvo and Mr. Jaime Marrero. Lt. Tom Davis and Pascual Quiñones ("Management I") first selected Mr. Montalvo, who was classified as a reassignment. Management I made their selection without interviewing any of the candidates.

When Mr. Montalvo turned down the position, this left Plaintiff and Mr. Marrero, classified as a change to a lower grade, as candidates for the vacant position. Whereas Mr. Montalvo had completed one of the two steps toward receiving his Professional Engineering license and Mr. Marrero had already obtained his Professional Engineering license, Plaintiff did not have either parts of her Professional Engineering license.

On December 28, 1995, Lt. Scott Hinton became the Public Works Officer. Mr. Quiñones was his deputy. Hinton and Quiñones ("Management II") interviewed both candidates; Plaintiff in person, Mr. Marrero by telephone. Management II selected Mr. Marrero for the vacant position on January 28, 1996. Lt. Scott was the official ultimately responsible for the selection.

Management II determined that Mr. Marrero's application was more detailed than Plaintiff's,

---

[3]Specifically, the announcement read:
"Applicants are strongly encouraged to address each one of the elements in writing.
KSA 1. Knowledge of the principles, concepts, theories, and practices of mechanical engineering.
KSA 2. Familiarity with other related engineering fields such as electrical, architectural, and structural.
KSA 3. Ability to communicate effectively both orally and in writing and to prepare technically adequate reports.
KSA 4. Ability to analyze and interpret designs, drawings, and contract specifications."
Dkt. 10, exh. 2.

98-1408 (PG) 5

with Mr. Marrero apparently taking more courses and having more experience in the Public Works area. Plaintiff's area of specialty was electrical engineering. While both candidates were proficient with applicable computer software, Mr. Marrero labeled himself as an expert. Additionally, Mr. Marrero is bilingual, Plaintiff is not.

The ratings of the interviews demonstrate that each candidate was qualified for the position. Plaintiff received a 31 rating from Lt. Hinton and a 27 from Quiñones. Mr. Marrero received a 27 rating from Lt. Hinton and a 26 from Quiñones. However, in the areas of Education and Experience, Marrero outscored Plaintiff 19 to 12, respectively. Also, neither Lt. Hinton nor Quiñones rated Mr. Marrero on personal appearance (because it was a telephone interview) and Quiñones did not rate him on personality.[4] Lt. Hinton rated Plaintiff higher in personality (5 to 4) than Marrero and rated Plaintiff 9 out of 10 in the categories of personal appearance and personality. Quiñones rated Plaintiff 8 out of 10 in those categories.

At the time of Plaintiff's complaint, no female African-Americans were employed at the Public Works Department.

## DISCUSSION

Plaintiff's submission to this Court are wrought with unsubstantiated allegations. It is well-settled law that a plaintiff must do more than state bald allegations; without more, summary judgment must be granted to a defendant. *See Anderson v. Liberty Lobby*, 477 U.S. at 252.

Plaintiff's misnamed List of Uncontested Facts reads more like an opening statement than a list

---

[4]When the categories of personality and personal experience are removed from the interview sheet, Mr. Marrero scores higher than Plaintiff on both Lt. Hinton's and Quiñones sheets. Plaintiff's scores would be 22 (Hinton) and 19 (Quiñones). Mr. Marrero's scores would be 23 (Hinton) and 26 (Quiñones). This lends credence both to Defendant's contention that Plaintiff was not chosen because Managenent II considered her to be qualified for the position, yet less qualified than Mr. Marrero.

AO 72A
(Rev.8/82)

98-1408 (PG) 6

of facts. Also, many of the "cited" references in this list of facts point to nothing which support the cited positions. The Court's docket is heavy and it cannot be expected to "ferret[] through the record" in search of evidence supportive of Plaintiff's case. *See Stepanischen v. Merchants Dispatch Transp. Corp.*, 722 F.2d 922, 931 (1st Cir. 1983).

Plaintiff may also be confused where she filed her case; her brief to this Court relies extensively on federal case law from New Jersey and the Third Circuit Court of Appeals. The Court points out that, at least at present, Puerto Rico is located within the First Circuit not the Third and is certainly not in New Jersey. For obvious reasons, Plaintiff's reliance on New Jersey and Third Circuit case law before this Court is misplaced.

### A. *MCDONNELL DOUGLAS* BURDEN SHIFTING

Title VII prohibits any employer from failing or refusing "to hire or discharge any individual or otherwise to discriminate with respect to his compensation, terms, conditions, or privileges or employment because of such individuals race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff has alleged a "disparate treatment" claim against Defendant, i.e., the employer treated her less favorably than others because of her race and her gender. *See International Bd. of Teamsters v. United States*, 431 U.S. 324, 335-36 n.15 (1977). In "disparate treatment" cases, "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Id.*

In "disparate treatment" cases, the plaintiff bears the burden of persuasion throughout the entire suit. *See Texas Dep't of Comm'ty Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The plaintiff must first prove a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* If the plaintiff can meet this burden, a mandatory presumption is created which requires the court to enter judgment for

98-1408 (PG) 7

the plaintiff unless the defendant can produce a legitimate, non-discriminatory reason for the adverse action. *Id.* at 253-54. A satisfactory reason destroys the presumption and the plaintiff must then demonstrate that the explanation is but a pretext for the adverse action. The plaintiff may do this either by persuading a court that a discriminatory reason more likely motivated an employer or indirectly by demonstrating that the employer's proffered reason not true. *Id.* at 256. A defendant merely has a burden of production. *Id.* at 257.

**B.    *PRIMA FACIE* CASE UNDER TITLE VII**

To establish a *prima facie* case of discrimination under Title VII, Plaintiff must show that:

(i)    She is a member of a class protected by Title VII;
(ii)   There is a vacant job for which the employer sought applicants and she applied;
(iii)  The employer did not hire her; and
(iv)   (a) The employer continued to recruit applicants with similar qualifications; (b) or selected an applicant who does not belong to the same protected class; or (c) hired a lesser qualified person.

*See McDonnell Douglas*, 411 U.S. at 802; *Cartagena v. Secretary of the Navy*, 618 F.2d 130, 133 (1st Cir. 1980). The parties do not dispute that Plaintiff satisfies the first three elements of a *prima facie* case. The Court therefore will discuss only the forth element.

Defendant argues that Plaintiff fails to satisfy the forth element, as Plaintiff's qualifications were not similar to Mr. Marrero's. Though the Court may be inclined to agree with Defendant's argument, the evidence, as seen in the light most favorable to Plaintiff, allows for Plaintiff and Defendant as having roughly the same qualifications.[5] Therefore, for purposes of deciding the forth element, the Court accepts that Plaintiff and Mr. Marrero had roughly the same qualifications and Plaintiff satisfies

---

[5]Plaintiff testified to this end:
Q:    Is it your contention that your qualifications exceed those of the individual selected for the position?
A.:   It is my contention that my qualifications are as equal to the selectee.
Atkinson hearing, Dkt. 10, exh. 1, p. 7.

98-1408 (PG)                                                                                                              8

the forth element and has established a *prima facie* case for both racial and gender discrimination.

## C.   LEGITIMATE NON-DISCRIMINATORY REASON FOR NON-HIRING

Defendant asserts that it hired Mr. Marrero (and not Plaintiff) based on a legitimate, non-discriminatory reason, namely that Mr. Marrero had more experience and credentials than Plaintiff. Under the *McDonnell Douglas* burden-shifting test, the burden shifts to Plaintiff to establish that the proffered reason is a mere pretext by (1) persuading the Court that a discriminatory reason more likely motivated an employer or (2) by demonstrating that the employer's proffered reason not true. Plaintiff has failed to present any evidence that a discriminatory reason motivated Defendant to not hire Plaintiff. Likewise, Plaintiff has failed to demonstrate (either directly or indirectly) that Defendant's proffered reason is not true. Defendant, on its part, points out that Mr. Marrero outscored Plaintiff 19 to 12 in the categories of education and experience on the interview sheets. Defendant also introduced more than enough evidence to demonstrate that Mr. Marrero had more experience in the public works area than Plaintiff. Therefore, because a plaintiff must do more than merely say the reason is pretextual, the Court grants Defendant's motion.

In support of her pretextual argument, Plaintiff alleges that Mr. Marrero did not submit his application properly as he allegedly faxed the application. However, Plaintiff cites no portion of the announcement which prohibits applications from being faxed. In fact, the announcement specifically says, "**HOW TO APPLY:** Submit any written format that contains **ALL** information required by this vacancy announcement." (Dkt. 10, exh. 2) The announcement also directs that "All applications should be submitted or mailed to the Consolidated Human Resources Office." *Id.*

Plaintiff also alleges that Mr. Marrero did not submit his college transcript, a copy of his engineering registration, or his knowledge, skills and ability (KSA) portion of his application. (Dkt.

98-1408 (PG) 9

16, p. 7) While the announcement "strongly encouraged [the applicants] to address each one of the [KSA] elements in writing," it did not require them to do so. The announcement also makes no mention of requiring a college transcript or proof of engineering registration. While it may be good practice to investigate your applicant, the announcement does not require it. The applicant is presumably expected to tell the truth.

Lt. Hinton testified at the hearing that "based on the applications, experience, the qualifications, the training, [he] selected the most qualified individual." (Dkt. 10, exh. 1, p. 20) The facts support this statement. The position sought to be filled was for a Public Works Engineer. Mr. Marrero's application portrayed himself as experienced in the public works area. Plaintiff was more familiar with Electrical Engineering. Mr. Marrero is bilingual; Plaintiff is not. Mr. Marrero has his Professional Engineering License; Plaintiff does not. These are factors which weighed in Mr. Marrero's favor, and against Plaintiff. While not requirements, Plaintiff exaggerates when she alleges that "these criteria were used to disqualify her." (Dkt. 16, p. 7) These factors simply demonstrate that Mr. Marrero possessed qualities that Plaintiff did not. Just because Plaintiff applied for the position does not mean that she had to be offered the job. *See* Fn.1. Defendant's motion is therefore GRANTED.

## IV.   PROPER PARTY DEFENDANT

Because the Court grants Defendant's motion based upon its legitimate, non-discriminatory reason, the Court does not dwell long upon Defendant's final ground for dismissal, that William Cohen, Secretary of Defense, is not the proper party defendant.

Title VII is clear in its requiring that "the head of the department, agency, or unit, as appropriate, shall be the defendant" in a civil action. 42 U.S.C. § 2000e-16(c). Therefore Defendant asserts, correctly, that John Dalton, in his capacity as Secretary of the Navy, is the proper party defendant in

98-1408 (PG)                                                                                              10

this case. *See, e.g., Gardner v. Gartman*, 880 F.2d 797 (4th Cir. 1989); *King v. Dalton*, 895 F. Supp. 831 (E.D. Va. 1995); *Barhorst v. Marsh*, 765 F. Supp. 995 (E.D. Mo. 1991). Plaintiff named the Secretary of Defense in place of the Secretary of Navy.

### CONCLUSION

Under Title VII, displeasure and unhappiness often result from discriminatory behavior. But of course, displeasure and unhappiness often are present outside of the scope of discrimination. In this case, Plaintiff is upset that she was not offered the position right away. Plaintiff incorrectly feels she was entitled to that position. She is also unhappy that she received little or no notice about an interview and a meeting.[6] While the Court may commiserate with many of Plaintiff's feelings, these feelings do not translate into a cause of action under Title VII. Title VII only ensures that every human being receives a *fair* opportunity to secure (or remain in) a position. It is designed to eradicate discrimination in hiring, firing and the general work environment. This Court cannot do what Plaintiff asks: the Court order an employer to hire a less qualified applicant simply because of race or gender. To do so would amount to a reverse discriminatory preference and defeat the very purpose of Title VII. The Supreme Court stated this premise succinctly in *Griggs v. Duke Power Co.*:

> Congress did not intend by Title VII . . . to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed.

401 U.S. 424, 430-31 (1971).

---

[6] Plaintiff was granted sufficient time in each instance when these errors were discovered. While certainly annoying, they fall far short of demonstrating any discriminatory animus or undertakings.

AO 72A
(Rev.8/82)

98-1408 (PG) 11

Wherefore, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's complaint is DISMISSED.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 26, 2000.

_____
JUAN M. PEREZ-GIMENEZ
U.S. District Judge

AO 72A
(Rev.8/82)